IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

VERONICA M. AKINES, et al.,

      Plaintiffs,

v.                              No. 02-2483 B

SHELBY COUNTY GOVERNMENT
(Shelby County Correctional Center),

      Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On July 17, 2006, this Court entered an order granting in part[1] and denying in part the motion for summary judgment of the Defendant Shelby County Government ("Shelby County"). (Order Granting in Part, Den. in Part Def.'s Mot. Summ. J. at 1). In that order the Court determined that the Defendant's statement of undisputed facts did not contain a sufficient factual basis for the Court to consider a motion for summary judgment as to Plaintiffs Chiffon Barden, Carolyn Boyd, Marilyn Cole, Jacqueline Dorsey, Kathleen Ellis, Ramona Hillman, Vicki Joiner, Francies Moody-Toles, Elaine Morris, Earline Riley, Tamara Taliaferro, Cheryl Thomas, Veronica Tinsley, or Tennia Williams.[2] Thereafter, the Court directed the Defendant to resubmit a motion for summary

---

[1]In that order, the Court dismissed the claims of Plaintiffs Thompson, Hudson, Webb, Akines, Dorsey, Seals, and Watson pursuant to Federal Rule of Civil Procedure 56. (Order Granting in Part, Den. in Part Def.'s Mot. Summ. J. at 41).

[2]As noted by the Court, the Defendant's motion did not address in any way the claims of most of these Plaintiffs.

judgment addressing the claims of the foregoing Plaintiffs.  Before the Court is the renewed motion

of Shelby County for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure.  For the reasons set forth below, the Defendant's motion for summary judgment is

GRANTED.

<u>BACKGROUND</u>

The Plaintiffs in this action are all female employees of the Defendant assigned to work with

inmates at the Shelby County Correctional Center ("SCCC").  In the instant action, the Plaintiffs

contend that they are often exposed to sexual harassment by inmates during the course of their

employment.  It is uncontested that SCCC has a written Inmate Discipline Policy ("IDP" or "the

Policy") setting forth rules governing inmate behavior, including provisions relating to the sexual

harassment complained of here.  (Def.'s Mem. in Supp. Initial Mot. Summ. J. ("Def.'s Initial[3]

Mot."), Ex. A at no. 2).  The IDP contains lists of major and minor infractions as well as a list of

sanctions for violation of the rules.  (Def.'s Initial Mot., Ex. A at no. 3).  Included among the

categories of prohibited inmate behavior are the making of sexually obscene gestures (Rule 202);

showing disrespect for any employee, by using derogatory, profane, abusive language, remarks or

gestures, including yelling (Rule 316); intentionally exposing the genitals, buttocks, or breasts

(female only) to another (Rule 319); and sexual assault or threat to commit sexual assault (Rule

405).  (Def.'s Initial Mot., Ex. A. at no. 10.)  Formal sanctions authorized under the Policy for

violation of these rules include punitive isolation, reduction in sentence credits and restriction of

---

[3]The motion referred to here as the Defendant's initial motion for summary judgment was
actually Shelby County's second motion for summary judgment in this case.  However, because the
second motion for summary judgment and this, the third, motion relate to the Plaintiffs' Title VII and
Section 1983 claims, for purposes of convenience, the Court will refer to the second motion for summary
judgment as the "initial" motion and the third as the "renewed" motion.

privileges including visitation, telephone, commissary, television, recreation and/or other privileges.[4] (Def.'s Initial Mot., Ex. A. at no. 11).

Under the Policy, any employee of the SCCC may write a disciplinary report ("report," "write-up," or "disciplinary") against any inmate who acts in violation of the rules that it sets forth.[5] (Def.'s Initial Mot., Ex. A at no. 4). The policy states that a report should be filed "as soon as possible after a violation is discovered" and that, after a disciplinary report is filed, an investigation will be initiated within 24-hours. (Def.'s Initial Mot., Ex. A at nos. 5, 6). Preparation of a disciplinary report upon observation of an inmate acting in violation of the IDP is a responsibility of an SCCC correctional officer's job. (Def.'s Initial Mot., Ex. A at no. 17). As part of their required annual in-service training, SCCC correctional officers are trained on how to prepare disciplinary reports for violations of the IDP.[6] (Def.'s Initial Mot., Ex. A at no. 20). Shelby County has an Inmate Disciplinary Board, comprised of four staff members, that handles all inmate disciplinaries for the County's Division of Corrections. (Dep. Marcquinne Yancey[7] at 6).

The incidents giving rise to the Plaintiffs' claims in this action occurred during the period

---

[4] Plaintiffs do not dispute that these sanctions are provided for under the IDP, but contend that they are not "being uniformly [sic] applied." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") at 19, no. 11.)

[5] Plaintiffs contend, based on the report of their expert, Paul McCauley, that SCCC staff is unclear as to the procedures to report "sexual misconduct by a supervisor." (Pl.'s Mem. Opp. Def.'s Second Mot. Summ. J. (Pl.'s Resp.") at 18, no. 4; Dep. Paul McCauley ("McCauley Dep.") at 83-84.) However, Plaintiffs do not argue that SCCC employees are unaware of the procedures to file a complaint against improper inmate behavior.

[6] According to at least one Plaintiff, Vicki Joiner, the in-service training on disciplinary write-ups utilized examples of sexual misconduct charges. (Def.'s Mot., Ex. A at no. 68.)

[7] Ms. Yancey is a deputy administrator of SCCC. See (Order Granting in Part, Den. in Part Defs.' Mot. Summ. J., Aug. 9, 2004, at 6 n.2).

3

between January 1999 and September 2002.[8]  (Def.'s Reply Pl.'s Resp. Def.'s Second Mot. Summ.

J. (Def.'s Reply"), Dep. Mark Henry Luttrell ("Luttrell Dep.") at 5).  In June 2000, George

Schellman[9] prepared a report at the request of William H. Montague, the Administrator of

Operations at the Center, of all incidents of masturbation or indecent exposure reported on the Day

Reports in the prior eighteen (18) months.  (Pl.'s Resp., Ex. 1, Schellman at 1-2).  The report cited

40 instances of such behavior and  included the following summary:

> 1. The overwhelming majority of these acts are directed at female
> employees. 2. These acts occur mostly in E and J Buildings. 3. The
> number of these acts seems to be increasing. 4. The incident reports
> indicate that these acts are blatant and directed towards staff.

(Pl.'s Resp., Ex. 1, Schellman at 2).  Marquinne Yancey, Program Administration Specialist A

("PASA") at SCCC, testified at her deposition that not every incident report that was filed regarding

sexual harassment would have been included on the Day Reports on which Schellman relied in

comprising the cited data.  (Yancey Dep. at 38-19).  According to Yancey, only sexual assaults or

major incidents would be recorded there.  (Yancey Dep. at 38-39).

In January 2002, female correctional officers raised their concerns regarding sexual

harassment by inmates in a meeting with Montague.[10]  (Pl.'s Resp. at 4).  While the details of this

_____

[8]  Plaintiffs' counsel stated during questioning in the cited deposition that "the relevant time period for this litigation is the time period in which [Mark Luttrell was] the director of the [SCCC]." (Luttrell Dep. at 5).  Luttrell served as Director of the SCCC from January 1999 through September 2002. (Luttrell Dep. at 5.)

[9]  Plaintiffs' response to the instant motion identifies Schellman as "the computer research person" at SCCC.  (Pl.'s resp. at 3.)  Yancey states in her deposition that Schellman is a "Supervisor A" assigned to work in the drug and alcohol treatment program.  She stated that Schellman was formerly "over the research and development process that we had out here for tracking different types of information that we were keeping up with."  (Yancey Dep. at 33-34.)

[10]  Plaintiffs note this meeting in their response to the instant motion, but do not cite to any portion of the record to supply information regarding the date, participants, or nature of the meeting. (Pl.'s Resp. at 4.)  However, Montague confirmed in his deposition that, prior to his issuance of a

meeting, including the participants and subject matter, have not been presented here, Montague testified at his deposition that, during this time, he was aware of the concerns of female correctional officers regarding inmate exposure, as well as concerns that male employees of the center were not responding appropriately to exposure incidents. Subsequently, on January 22, 2002, he issued a memorandum specifically addressing inmate exposure at SCCC. (Def.'s Initial Mot., Ex. A at 12; Pl.'s Resp., Core Ex. 4). The memorandum, addressed to "[a]ll Supervisors and Employees," stated as follows:

> The problem of inmate sexual exposure to staff is one of a serious nature and should not /is not to be taken lightly. . . . No incident of inmate sexual exposure to staff (or each other) will be ignored. Staff personnel who are targets of intentional, deliberate acts of this type of disrespect will immediately notify their supervisors and proceed to compose a disciplinary narrative supporting the charge. . . . By no means will any one attempt to correct this problem by ignoring it or by casually excusing it as though "it is part of the job."

(Pl.'s Resp., Core Ex. 4 at 1-2). Also in January 2002, Montague requested that the Disciplinary Hearing Board increase the sanctions imposed on inmates who intentionally exposed themselves to staff in order to rectify their behavior. (Dep. Gloria Jean Reddick ("Reddick Dep.") at 14).[11] In addition, he directed the Disciplinary Hearing Board to prepare a report detailing incidents of

---

memorandum on the subject on January 22, 2002, he "was meeting with [female] officers who were coming to [him] with concerns" about indecent exposure by inmates. (Dep. William H. Montague, Jr. ("Montague Dep.") at 30.)

[11] Sergeant Reddick, a member of the Disciplinary Hearing Board, testified in her deposition that Montague requested that the Board "doubl[e] up" the sanctions imposed on inmates. (Dep. Gloria Jean Reddick ("Reddick Dep.") at 14; Def.'s Mot. at 6, no. 18; Pl.'s Resp. at 19, no. 18.) Reddick also testified that on January 30, 2002, Marquinne Yancey, the Deputy Administrator of the Adult Offender Center at SCCC, contacted the Disciplinary Hearing Board to pass on Montague's request that all inmates found guilty of a first or repeat offense of exposing themselves to staff should get the maximum penalty of thirty (30) days in isolation and a loss of sentence credits. (Reddick Dep. at 49-59; Ex 1 at D1133.) It is unclear whether this testimony refers to the same or separate instances in which Montague requested that the Disciplinary Board increase sanctions.

indecent exposure.  Pursuant to this request, on January 23, 2002, Dorothy Golden[12], prepared a memorandum listing all inmates who intentionally exposed themselves to staff between January 1, 2001 and January 22, 2002.[13]  (Marquinne Yancey Unsworn Statement ("Yancey Statement"), Ex. 4).[14]  During this period, inmates at SCCC were charged with 287 instances of intentionally exposing themselves to staff.  (Yancey Statement, Ex. 4).  According to Golden's report, all but nine of those inmates were found guilty and subjected to some form of sanction for the reported conduct, including punitive time or a loss of sentence credits. (Yancey Statement, Ex. 4).  Regarding the nine who received no sanction, seven were dismissed and two were found not guilty.   (Yancey Statement,  Ex. 4).

Between February 1, 2002 and February 18, 2002, twenty-seven inmates were charged with violation of Rule 319 for intentionally exposing themselves.  (Def.'s Reply Pl.'s Resp. Def.'s First Mot. Summ. J., Gloria Reddick Unsworn Statement ("Reddick Statement") at ¶ 2, Ex. 1).  Of those, twenty-six received sanctions of punitive time or a loss of sentence credits. (Reddick Statement ¶ 2, Ex. 1.)  The final inmate was found not guilty of violation of Rule 319, but was found guilty of masturbation in violation of Rule 202. (Reddick Statement  ¶ 2, Ex. 1).

------

[12]  At the time the report was generated, Golden was employed with SCCC as a Disciplinary Hearing Officer.  (Unsworn Statement Dorothy J. Golden ("Golden Statement") at ¶ 1.)

[13]  Plaintiffs do not disagree that this data is contained in Golden's memorandum to Montague, but dispute its accuracy.  In support of their position, Plaintiffs cite the deposition testimony of Plaintiff Elaine Morris in which she states that "the list" does not show all the times that a particular inmate, Thomas Camp, was written up.  (Dep. Elaine Morris ("Morris Dep.") at 96.)  In addition, she states that she was subjected to inmate exposure "every day" in 2001, however, she does not specify how many of these occurrences were reported and not included in Golden's memorandum.  (Morris Dep. at 114.)

[14] During the relevant period, and in her position as Program Administration Specialist A at SCCC, Yancey was responsible for overseeing the Disciplinary Board.  (Yancey Dep. at 6.)  In addition, she worked with employee grievances, including conducting step-three grievance hearings.  (Yancey Dep. at 6.)

Plaintiffs have also complained about sexual harassment by co-workers and supervisors. However, they concede that their complaint does not seek relief for sexual harassment specifically by co-workers or supervisors. Rather, such allegations are offered only as additional evidence to show the presence of a hostile work environment.

As of November 2003, there were 2,582 inmates housed in the SCCC, approximately 92% of whom were male.[15] (Unsworn Statement Marquinne Yancey ("Yancey Statement") ¶ 10). SCCC employs 367 correctional officers at the Center. Of those, 220 are male and 147 are female. (Yancey Statement ¶ 11). Because there are not enough male officers to cover the male inmates, female correctional officers are often assigned to male inmate facilities. (Def.'s Initial Mot., Ex. A, at no. 64). However, male officers are not assigned to work in female inmate facilities. (Dep. Vicki Joiner ("Joiner Dep.") at 62).

Plaintiffs each filed complaints with the Equal Employment Opportunity Commission ("EEOC") regarding the sexual harassment complained of herein between the period of January 31, 2002 and May 2002.[16] (Compl. ¶ 3). They subsequently brought this federal action alleging sexual harassment in violation of Title VII, 42 U.S.C. § 2000e and 42 U.S.C. §§ 1983, 1985, and 1986 and the Tennessee Whistleblower Act, Tenn. Code Ann. § 50-1-304.

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings,

---

[15] 2,386 of 2,582 inmates are male and 196 are female. (Yancey Statement ¶ 10.)

[16] The first of the Plaintiffs' complaints to be filed was that by Tamara Taliaferro on January 31, 2002. (Compl. ¶ 3.) Cherly Thomas' complaint was the last to be filed on May 8, 2002. (Compl. ¶ 3.) All others were filed in the intervening period with the exception of the complaint by Francies Moody-Toles, whose EEOC complaint filing date is unknown. (Compl. ¶ 3.)

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

8

## I. Plaintiffs' Title VII Claims

Plaintiffs' Title VII claims are for hostile work environment based on sex. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to[ her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ."42 U.S.C. § 2000e-2(a). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986).

To establish a *prima facie* case of a hostile work environment based on sex, Plaintiffs must prove that they (1) were members of a protected class; (2) were subject to unwelcome sexual harassment; (3) the harassment was based on their sex; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable. Clark v. United Parcel Serv., Inc., 400 F.3d 341, 347 (6th Cir.2005). A hostile working environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). The environment "must be both objectively and subjectively offensive, or that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  "The determination of whether an environment is "hostile" or "abusive" requires particularized consideration of the circumstances, including the frequency of the conduct and its severity."  Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111 (8th Cir. 1997). Consideration of the Plaintiffs' expectations of their work environment is a relevant consideration

in determining whether that environment was hostile.   See id. (finding that the appellants'
"expectations given their choice of employment" in a group home for mentally incapacitated
residents should be considered in determining whether the environment was hostile or offensive).
Regarding the final element, "[e]mployers are liable for the actions of nonemployees only when they
knew or should have known of the offensive behavior and failed to take immediate and appropriate
action."   Gliatta v. Tectum, Inc., 211 F.  Supp. 2d 992, 1002 (S.D. Ohio 2002) (citing 29 C.F.R. §
1604.11(e));[17] see also Wheaton v. N. Oakland Med. Ctr., 130 Fed. Appx. 773, 787 (6th Cir. 2005).

In the instant action, Plaintiffs allege incidents of both inmate (non-employee) and employee
harassment.  Among the latter, Plaintiffs contend that they have been subjected to sexual harassment
by male correctional officers and supervisors.  However, as indicated in this Court's order on the
County's first motion for summary judgment, Plaintiffs do not seek relief for sexual harassment
specifically by coworkers or supervisors.  (Order at 6, n. 1.)  Rather, such factual allegations are
offered solely by the Plaintiffs as evidence demonstrating the presence of a hostile work
environment condoned by the Defendant.

Regarding sexual harassment by the SCCC inmates, courts have consistently declined to

---

[17] 29 C.F.R. § 1604.11(e), the EEOC's Guidelines on Sex Discrimination, provides that:

> [a]n employer may also be responsible for the acts of non-employees,
> with respect to sexual harassment of employees in the workplace, where
> the employer (or its agents or supervisory employees) knows or should
> have known of the conduct and fails to take immediate and appropriate
> corrective action. In reviewing these cases the Commission will consider
> the extent of the employer's control and any other legal responsibility
> which the employer may have with respect to the conduct of such
> non-employees.

"While the EEOC Guidelines are intra-agency guidelines not binding on federal courts, they are
nevertheless entitled to deference in the courts." Magnuson v. Peak Technical Servs., Inc., 808 F. Supp.
500, 513 (E.D. Va. 1992).

impose sexual harassment liability upon correctional institutions for offensive conduct of prisoners where the defendant undertook proper preventive and remedial measures in response.  <u>Powell v. Morris</u>, 37 F. Supp. 2d 1011, 1017 (S.D. Ohio 1999) (citing <u>Maine v. Okla. Dept. of Corr.</u>, 125 F.3d 862 (10th Cir.1997), and <u>Hicks v. State of Ala.</u>, 45 F. Supp. 2d 921 (S.D. Ala. 1998)).  In so holding, one court in this Circuit has reasoned that

> anyone who works at a prison, particularly in a position with frequent inmate contact, must expect some off-color interactions. Prison employees inherently assume the risk of some rude inmates. It is absurd to expect that a prison can actually stop all obscene comments and conduct from its inmates-people who have been deemed unsuited to live in normal society. The most we can expect and require prisons to do is to implement and enforce policies reasonably calculated to minimize such harassment and protect the safety of its employees.

<u>Powell</u>, 37 F. Supp.2d at 1017; <u>see also</u> <u>Slayton v. Ohio Dept. of Youth Servs.</u>, 206 F.3d 669, 677 (6th Cir. 2000) ("Prisoners, by definition, have breached prevailing societal norms in fundamentally corrosive ways.  By choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior.").

However, the general rule against liability for inmate conduct is inapplicable where the institution "fails to take appropriate steps to remedy or prevent illegal inmate behavior."  <u>Slayton</u>, 206 F.3d at 677.   In determining the "appropriateness" of an employer's response, no bright line rule exists.  <u>Trumbell v. Topeka State Hosp.</u>, 255 F.3d 1238, 1244-1245 (10th Cir. 2001).  Rather, the inquiry should be whether the response was "reasonable under the circumstances."  <u>Id.</u> at 1245. "Key factors in that determination are the promptness and effectiveness of any action."   <u>Id.</u> However, because it is not possible in every instance to completely eliminate offensive behavior, the effectiveness inquiry should look, "not to whether offensive behavior actually ceased but to whether the remedial and preventative action was reasonably calculated to end the harassment."  <u>Id.</u>

Initially, the Court notes that the Defendant has submitted a statement of undisputed material facts with regard to each of the remaining Plaintiffs. The Plaintiffs, however, have failed to respond as provided by the Local Rules of this district. See L.R. 7.2(d)(3), Local Rules for the U.S. Dist. Court for the W.D. Tenn. ("[T]he opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied . . . shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.") (emphasis added). In their response, the represented Plaintiffs select various portions of their deposition testimony setting forth their own statement of facts in a narrative fashion that does not directly deny the material facts as put forth by the Defendant. The Court is not required to sift through pleadings to determine if the non-moving party has sufficiently responded to the statement of undisputed material facts. See Featherston v. Charms Co., 2005 WL 1364621, at *1 n.1 (W.D. Tenn. May 10, 2005) (deeming moving party's statement of undisputed material facts as admitted where non-moving party responded to movant's statement of undisputed material facts by submitting "a two page narrative 'Facts' section, in which [the non-moving party] did not dispute the facts in [movant's] statement of undisputed facts"). Because the Plaintiffs have failed to respond as provided by the Local Rules, this Court will consider the Defendant's statement of undisputed material facts as having been admitted by the Plaintiffs. See Thornton v. Fed. Express Corp., No. 05-2247, 2007 WL 188573 *2 n.2 (W.D. Tenn. Jan. 22, 2007) (deeming as admitted the defendant's statement of facts based upon the plaintiff's failure to comply with Local Rule 7.2(d)(3)). Finally, Because each remaining Plaintiff asserts an individual claim pursuant to Title VII in this action, the

Court will consider the sufficiency of each in turn.

A. Chiffon Barden

Plaintiff Barden was aware of the SCCC's harassment policy, having attended "in-service training on the policy." (Def.'s Statement of Undisputed Material Facts in Supp. Mot. Summ. J. ¶ 1) ("Def.'s Facts"). As a result Barden knew she could complain of sexual harassment. (Id.). Barden never complained to SCCC that she was sexually harassed by any SCCC employee. (Def.'s Facts ¶ 6). SCCC never denied Barden "the opportunity to file a disciplinary report on an inmate who ha[d] exposed himself to her," and no SCCC employee ever encouraged any inmate to expose himself to her. (Def.'s Facts ¶¶ 7, 8). SCCC properly investigated the disciplinary reports turned in by Barden.[18] (Def.'s Facts ¶ 10).

Regarding inmates exposing themselves to her, Barden wrote a disciplinary report on an inmate in November 2001, but she could not remember his name. (Def.'s Facts ¶ 13) Of the five inmates whose names she did remember, Barden's disciplinary reports resulted in each inmate being found guilty and placed in isolation for periods ranging from fifteen to thirty days. (Def.'s Facts ¶¶ 14-18).

The Court concludes that Barden's testimony does not establish the Defendant's liability under Title VII. Rather, according to the evidence presented to the Court, in all instances in which Barden presented specific evidence of filing a complaint regarding inmate behavior, the Defendant responded. Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Chiffon Barden is GRANTED.

_____

[18]In fact, although a supervisor once "threw out" a "write-up" by Barden of a "female inmate for taking a cup to the kitchen to get hot water," Barden acknowledged that the supervisor never threw out any other charge she filed against an inmate. (Def.'s Facts ¶ 11).

### B. Carolyn Boyd

Carolyn Boyd was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 22). No SCCC employee ever sexually harassed Boyd. (Def.'s Facts ¶ 23). No one at SCCC ever discouraged Boyd from filing disciplinary reports regarding inappropriate inmate behavior. (Def.'s Facts ¶ 24). No SCCC employee ever encouraged any inmate to expose himself to Boyd. (Def.'s Facts ¶ 25).

Boyd filed only one disciplinary report against an inmate for exposing himself, resulting in the inmate being found guilty and placed in isolation for thirty days. (Def.'s Facts ¶¶ 26-27). Further, that particular inmate was charged with the offense of indecent exposure in violation of Tennessee Code Annotated section 39-13-511. (Def.'s Facts ¶ 28). Boyd could not recall the name of another inmate who exposed himself to her but another SCCC employee filed a disciplinary report against that inmate. (Def.'s Facts ¶ 29). SCCC properly investigated all of the disciplinary reports filed by Boyd. (Def.'s Facts ¶ 31).

The Court concludes that Boyd's testimony does not establish the Defendant's liability under Title VII. Rather, according to the evidence presented to the Court, in all instances in which Boyd presented specific evidence of filing a complaint regarding inmate behavior, the Defendant responded. Indeed, not only was that inmate administratively punished, he was also charged criminally. Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Carolyn Boyd is GRANTED.

### C. Marilyn Cole

Marilyn Cole was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 35). Although two co-employees sexually harassed her, Cole never filed a complaint

against them.  (Def.'s Facts ¶ 36).  Cole submitted a disciplinary report against every inmate who exposed himself to her.  (Def.'s Facts ¶ 37).  When presented with information regarding the disposition of her disciplinary reports, Cole "was unaware that so many inmates had been disciplined for exposing themselves to female correctional officers."  (Def.'s Facts ¶ 39).  No SCCC employee ever encouraged any inmate to expose himself to Cole.  (Def.'s Facts ¶ 40).

Cole filed only one disciplinary report against an inmate, whose name she could remember, for exposing himself to her, resulting in the inmate being found guilty and placed in isolation for thirty days.  (Def.'s Facts ¶¶ 43-44).  On January 20, 2002, Cole "told Lt. Gist and Capt. Chambers that she wanted to file a sexual harassment complaint against inmates . . . who had exposed themselves to her in August or September 2001 . . . ."  (Def.'s Facts ¶ 45).  Capt. Chambers explained to Cole that she could not file a sexual harassment claim based upon the inmates exposing himself to her, but he did not prevent her or discourage her from filing a "disciplinary write-up." (Id.).  In any event, Cole never filed a disciplinary report against the inmates who exposed themselves to her in August or September 2001.  (Def.'s Facts ¶ 48).

On June 2, 2002, Cole initiated "count time" for a cell block, removed a blanket in front of one cell, and noticed an inmate "seated on the toilet masturbating."  (Def.'s Facts ¶ 48).  Cole told the inmate to "stop masturbating until she completed the count," and he agreed.  (Id.).  Cole did not file a disciplinary report as a result of this incident.  (Id.).

The Court concludes that Cole's testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which Cole filed a disciplinary report against a specific inmate, the Defendant responded.  Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary

judgment as to Marilyn Cole is GRANTED.

    D.  Jacqueline Dorsey

In the previous order, the Court denied the Defendant's motion for summary judgment with

regard to this Plaintiff, noting the following:

> The foregoing facts submitted by the Defendant indicate that Plaintiff
> Dorsey was aware of the IDP, received training on filing disciplinary
> reports, and did in fact file such reports on offending inmates.
> However, the motion does not address whether the County promptly
> and appropriately responded to those reports.  As such, there is no
> basis from which the Court can determine whether there is a lack of
> a genuine issue of material fact for trial as to Dorsey's Title VII
> claim.

(Order Granting in Part, Den. in Part Def.'s Mot. Summ. J. at 31).

In support of the renewed motion for summary judgment, the Defendant has submitted

additional facts regarding Dorsey.  Dorsey has never seen any SCCC employee "tear up or throw

away any disciplinary write-up she or another correctional officer has prepared."  (Def.'s Facts ¶

54).  Dorsey filed a disciplinary report against an  inmate for exposing himself to her, resulting in

the inmate being found guilty and placed in isolation for thirty days.  (Def.'s Facts ¶¶ 55-56).

Dorsey also filed a disciplinary report, apparently received by SCCC, against another inmate

on March 16, 2002.  (Def.'s Facts ¶ 57).  That incident involved Dorsey "walking by a shower in

a dorm and [hearing] the water running."  (Id.).  Dorsey asked who was in the shower, and an inmate

stepped out of the shower nude while rubbing his entire body and then walked towards the wall

where his towel was hanging.  (Id.).  Dorsey told the inmate to cover himself with a towel until she

left the area.  (Id.).  The Inmate Disciplinary Board, however, has no record of Dorsey filing a

disciplinary report against this individual.  (Id.).

16

The Court concludes that Dorsey's testimony does not establish the Defendant's liability under Title VII. Rather, according to the evidence presented to the Court, in all instances, save one, in which Dorsey filed a disciplinary report against a specific inmate, the Defendant responded. Regarding the incident occurring in the shower area, even assuming that the inmate's actions were in violation of SCCC policy and that he was not placed in isolation as a result, this one occurrence is not sufficient to establish Dorsey's claims where the evidence demonstrates that hundreds of inmates were disciplined in response to complaints. See Maine v. Okla. Dept. of Corr., 125 F.3d 862, *2 (declining to attribute sexually offensive conduct to Defendant where the record demonstrated that it did discipline "many of the inmates in response to plaintiff's complaints"). Accordingly, the Court GRANTS the motion of the Defendant with respect to Plaintiff Dorsey.

E.  Kathleen Ellis

Kathleen Ellis was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 59). No male SCCC employee has ever offended Ellis by making comments of a sexual nature in her presence. (Def.'s Facts ¶ 60). No supervisor ever discouraged Ellis from "writing up male inmates who exposed themselves to her." (Def.'s Facts ¶¶ 61-62).

Although no SCCC employee encouraged an inmate to expose himself to her, a male coworker "once allowed inmates to look at a magazine containing pictures of females in bathing suits" in Ellis' presence. (Def.'s Facts ¶ 63). Ellis, however, did not report this incident even though it was a violation of SCCC rules. (Id.).

Ellis filed a disciplinary report on every inmate who exposed themselves to her. (Def.'s Facts ¶ 65). She admits that the majority of disciplinary reports are processed properly. (Def.'s Facts ¶ 66). Concerning the specific charges she filed against inmates, whose names she could recall,

for exposing themselves to her, both men were found guilty and placed in isolation for fifteen and thirty days respectively.  (Def.'s Facts ¶¶ 69-70).

The Court concludes that Ellis' testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which Ellis filed a disciplinary report against a specific inmate, the Defendant responded.  Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Kathleen Ellis is GRANTED.

F.  Ramona Hillman

Ramona Hillman was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 71).  Hillman reported SCCC Sgt. Brown for sexual harassment. (Def.'s Facts ¶ 72). In accordance with SCCC policy, the Sexual Harassment Compliance Team investigated this allegation and found that Sgt. Brown violated SCCC's sexual harassment policy.  (Def.'s Facts ¶ 73).  As a result, SCCC fired Sgt. Brown.  (Id.).

SCCC properly investigated all of the disciplinary reports turned in by Hillman.  (Def.'s Facts ¶ 76).  The Defendant imposed punishment on every inmate against whom Hillman filed a disciplinary report.  (Def.'s Facts ¶ 77).

The Court concludes that Hillman's testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which Hillman filed a disciplinary report against either a coworker or a specific inmate, the Defendant responded.  Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Ramona Hillman is GRANTED.

G.  Vicki Joiner

18

In the previous order, the Court denied the Defendant's motion for summary judgment with regard to this Plaintiff, noting the following:

> Upon review of the facts submitted in support of the Defendant's motion, the Court concludes that they are insufficient to address Joiner's claim that she was subjected to sexual harassment by male inmates and that the Defendant failed to take prompt and remedial action in response. From the "material" facts chosen by the Defendant, all that can be inferred is that Joiner had the opportunity to file complaints. Whether or not she did, and whether or not the County responded, remains to be addressed. Accordingly, the Court DENIES the Defendant's motion as to Plaintiff Joiner.

(Order Granting in Part, Den. in Part Def.'s Mot. Summ. J. at 29).

In support of the renewed motion for summary judgment, the Defendant has submitted additional facts regarding this Plaintiff. SCCC Sgt. King sexually harassed Joiner. (Def.'s Facts ¶ 84). Eventually, Joiner reported this harassment to SCCC, which investigated the complaint, resulting in its forcing Sgt. King into retirement. (Def.'s Facts ¶ 86). SCCC thereafter counseled Joiner to immediately report such behavior in the future "rather than trying to handle it on her own" as she had done with regard to Sgt. King. (Id.).

Concerning inmates, "[e]very time Joiner has sought to file a disciplinary write-up, she has filed it." (Def.'s Facts ¶ 92). Joiner filed disciplinary reports on seven inmates for exposing themselves to her, resulting in each defendant being administratively punished.[19] (Def.'s Facts ¶¶ 94-100).

The Court concludes that Joiner's testimony does not establish the Defendant's liability under Title VII. Rather, according to the evidence presented to the Court, in all instances in which

---

[19]Six of the seven inmates were placed in isolation for periods ranging from ten to twenty-five days. The seventh inmate had his sentence credits reduced by forty-five days. (Def.'s Facts ¶¶ 94-100).

Joiner filed a disciplinary report against either a coworker or a specific inmate, the Defendant responded. Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Vicki Joiner is GRANTED.

H.  Francies Moody-Toles

No SCCC employee has ever sexually harassed Francies Moody-Toles. (Def.'s Facts ¶ 101). Concerning inmates, in 2001, an inmate exposed himself to Moody-Toles and began to masturbate. (Def.'s Facts ¶ 102). A male correctional officer and SCCC co-worker observed this incident and commented "that's just what [the inmates] do." (Id.). However, the co-worker did not discourage Moody-Toles from filing a disciplinary report regarding the incident. (Id.).

No SCCC employee has ever attempted to prevent Moody-Toles from filing a disciplinary report. (Def.'s Facts ¶ 104). This Plaintiff filed three disciplinary reports against inmates for exposing themselves to her, resulting in their being administratively punished.[20]

Concerning another inmate, Moody-Toles filed a disciplinary report "sometime in 2000 or 2002" against him for exposing himself to her, but the Defendant was unable to determine the adjudication of the write-up from its administrative records. (Def.'s Facts ¶¶ 112-113). However, the Defendant has submitted a judgment of conviction from the Shelby County Criminal Court reflecting that the inmate in question was prosecuted for and found guilty of three separate counts of indecent exposure on March 13, June 18, and June 22, 2002. (Def.'s Facts ¶ 114).

The Court concludes that Moody-Toles' testimony does not establish the Defendant's liability under Title VII. Rather, according to the evidence presented to the Court, in all instances

---

[20]The three disciplinary reports concerned two inmates. The first inmate was placed in isolation for twenty days for one incident and "lost 45 days sentence credits" for the other. (Def.'s Facts ¶¶ 108-09). The other inmate was placed in isolation for eighteen days. (Def.'s Facts ¶ 110).

in which Moody-Toles filed a disciplinary report against a specific inmate, the Defendant responded either administratively or by filing criminal charges against the inmate.  Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Francies Moody-Toles is GRANTED.

### I.  Elaine Morris

Elaine Morris was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 116).  SCCC Sgt. Brown made inappropriate statements to Morris but she failed to report him as provided by SCCC policy.  (Def.'s Facts ¶ 117).  No SCCC employee has ever discouraged Morris from filing disciplinary reports.  (Def.'s Facts ¶ 118).

Morris has filed various disciplinary reports against inmates for exposing themselves to her. (Def.'s Facts ¶ 119).  On September 1, 2000, the Plaintiff filed a disciplinary report against an inmate for exposing himself to her, resulting in the inmate being found not guilty.[21]  (Def.'s Facts ¶ 120).  However, every other inmate against whom Morris filed a disciplinary report for exposing himself to her was administratively punished.  (Id.).

The Court concludes that Morris' testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which Morris filed a disciplinary report against a specific inmate, the Defendant responded.  To the extent one inmate was found not guilty, Morris' claim still fails because she cannot show that SCCC's administrative action was unreasonable.  See Trumbell, 255 F.3d at 1245.  Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary

---

[21]The inmate in question "was taken before the Disciplinary Hearing Board on the charge, and Disciplinary Hearing Officer Willie Green found [him] not guilty . . . ." (Def.'s Facts ¶ 120).  The SCCC officer explained his decision by noting that there was "nothing in the written report that showed the actions of [the inmate] were intended for [Morris] to see."  (Id.).

judgment as to Elaine Morris  is GRANTED.

J.  Earline Riley

No employee of SCCC has ever harassed Earline Riley.  (Def.'s Facts ¶ 125).  However, one male coworker made an inappropriate comment to another female officer, and Riley reported him to a supervisor.  (Def.'s Facts ¶ 126).  After the supervisor spoke to the male coworker, he avoided Riley "like the plague."  (Id.).

This Plaintiff once commented to SCCC Capt. Chambers that an inmate had exposed himself to her, prompting Capt. Chambers to comment, "look at where you work."  (Def.'s Facts ¶ 129). Further, Riley once told SCCC Capt. Phillips that SCCC needed to do something "about the inmates flashing the officers," to which Capt. Phillips responded, "huh."  (Def.'s Facts ¶ 130).  However, neither supervisor dissuaded Riley from filing disciplinary reports and she did so "every time an inmate [had] exposed himself to her."  (Def.'s Facts ¶ 132).

Riley filed two disciplinary reports against inmates whose names she could remember, resulting in both men being found guilty and administratively punished.  (Def.'s Facts ¶¶ 139-40).

The Court concludes that Riley's testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which Riley filed a disciplinary report against a specific inmate or a coworker, the Defendant responded. Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Earline Riley  is GRANTED.

K.  Tamara Taliaferro

Tamara Taliaferro was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 142).  Taliaferro reported one male coworker for sexual harassment.  (Def.'s Facts

¶ 145).  "The Division of Corrections Sexual Harassment Team reviewed Taliaferro's allegations and determined that [the coworker] had not sexually harassed her."  (Def.'s Facts ¶ 146).

No SCCC employee ever did anything to encourage inmates to expose themselves to female correctional officers.  (Def.'s Facts ¶ 153).

Concerning inmates who exposed themselves to her, Taliaferro filed a report against one inmate but the paperwork was not properly processed because "her supervisor's signature was not on it."  (Def.'s Facts ¶ 159).  However, at her deposition testimony, Taliaferro produced the original copy of the report which had all the carbon copies attached.  (Def.'s Facts ¶ 158).

Taliaferro filed a disciplinary report against another inmate for exposing himself to her but SCCC has no record of that report having been filed.  (Def.'s Facts ¶ 161).  However, SCCC did locate a report filed by Taliaferro against that inmate "for disobeying an order and showing disrespect," resulting in him being found guilty and administratively punished with the loss of thirteen days sentence credits.  (Def.'s Facts ¶ 162).

The Court concludes that Taliaferro's testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances, save two, in which Taliaferro filed a disciplinary report against a specific inmate, the Defendant responded. Regarding the original report produced by Taliaferro at her deposition, it is uncontroverted that she failed to comply with SCCC policy in filing that particular report.  As to the second instance, even assuming that the actions of the inmate whom Taliaferro wrote up in the  report, the record of which SCCC cannot locate, were in violation of SCCC policy and that he was not placed in isolation as a result, this one occurrence is not sufficient to establish Taliaferro's claims where the evidence demonstrates that hundreds of inmates were disciplined in response to complaints.  See Maine v.

Okla. Dept. of Corr., 125 F.3d 862, *2 (declining to attribute sexually offensive conduct to Defendant where the record demonstrated that it did discipline "many of the inmates in response to plaintiff's complaints"). Accordingly, the Court GRANTS the motion of the Defendant with respect to Tamarra Taliaferro.

### L.  Cheryl Thomas

Cheryl Thomas was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 163). SCCC Sgt. Jones and Capt. Gist sexually harassed Thomas, but she did not report the harassment pursuant to SCCC policy. (Def.'s Facts ¶¶ 164-67). On every occasion that Thomas filed a disciplinary report against an inmate for exposing himself to her, the inmate was disciplined properly. (Def.'s Facts ¶ 169).

The Court concludes that Thomas' testimony does not establish the Defendant's liability under Title VII. Rather, according to the evidence presented to the Court, in all instances in which Thomas filed a disciplinary report against a specific inmate, the Defendant responded. Further, Thomas' claim that coworker sexual harassment contributed to the hostile work environment affords her no relief as she "failed to take advantage of any preventive or corrective opportunities provided by the employer . . . ." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998). Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Cheryl Thomas is GRANTED.

### M. Veronica Tinsley

Veronica Tinsley was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶ 177). Tinsley has been harassed by coworkers, but she failed to file a report of harassment pursuant to SCCC policy. (Def.'s Facts ¶¶ 178).

Tinsley filed disciplinary reports against every inmate who exposed themselves to her. (Def.'s Facts ¶ 181).  On one occasion after an inmate had exposed himself to Tinsley, a male coworker told her, "[a]ll you women file these charges like you all ain't never seen penises before." (Def.'s Facts ¶ 182).  However, this comment did not dissuade Tinsley from filing disciplinary reports against inmates who exposed themselves to her.  (Def.'s Facts ¶ 183). SCCC properly processed each report filed by Tinsley against an inmate who exposed himself to her.  (Def.'s Facts ¶ 189).

The Court concludes that this Plaintiff's  testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which Tinsley filed a disciplinary report against a specific inmate, the Defendant responded. Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Veronica Tinsley is GRANTED.

N.  Tennia Williams

Tennia Williams was aware of and had been trained on SCCC's sexual harassment policy. (Def.'s Facts ¶¶ 199-200).  Williams has filed a disciplinary report against every inmate who exposed himself to her.  (Def.'s Facts ¶ 209).  Every inmate but one against whom Williams filed a such a report was found guilty and placed in isolation.  (Def.'s Facts ¶¶ 212, 214-18).  SCCC did not punish one of the inmates "due to the 14-day length of time between the write-up and the disciplinary hearing,"which exceeded the length of time in which a disciplinary hearing must be held pursuant to SCCC rules.  (Def.'s Facts ¶ 213).

The Court concludes that Williams' testimony does not establish the Defendant's liability under Title VII.  Rather, according to the evidence presented to the Court, in all instances in which

Williams filed a disciplinary report against a specific inmate, the Defendant responded.  Because there is no genuine issue of material fact with regard to her claims, Shelby County's motion for summary judgment as to Tennia Williams is GRANTED.

II. Plaintiffs' Section 1983 Claim

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."  Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001).

Local governments such as the Shelby County are considered "persons" for purposes of § 1983.  Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000).  This does not mean, however, that municipalities are "liable for every misdeed of their employees and agents."  Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).  Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing Monell, 436 U.S. at 694, 98

26

S.Ct. at 2027); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99

(1986); and <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989)).  The Sixth

Circuit has instructed that

> [f]or liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort.  Such a requirement ensures that a [municipality] is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [municipality].  The "policy" requirement is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials.  Instead, the "policy" requirement is meant to distinguish those injuries for which the [municipality] is responsible under § 1983, from those injuries for which the [municipality] should not be held accountable.

<u>Gregory v. Shelby County, Tenn.</u>, 220 F.3d 433, 441 (6th Cir. 2000) (internal citations omitted).

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate

decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice

is so widespread as to have the force of law." <u>Brown</u>,  520 U.S. at 404, 117 S.Ct. 1382 (1997) (citing

<u>Monell</u>, 436 U.S. at 690-91, 98 S.Ct. at 2035-36).

> A "custom" for purposes of <u>Monell</u> liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy.  It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

<u>Doe v. Claiborne County, Tenn.</u>, 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and

citations omitted).  A plaintiff must, in order to show a custom or policy, adduce specific facts in

support of her claim.  Conclusory allegations will not lie.  <u>Culberson v. Doan</u>, 125 F. Supp. 2d 252,

263-64 (S.D. Ohio 2000).  The Supreme Court has consistently held that a municipality may not be

held liable solely on the basis of respondeat superior.  See Brown, 520 U.S. at 404, 117 S.Ct. at

1388; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163,

166, 113 S.Ct. 1160, 1162 (1993); Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121, 112

S.Ct. 1061, 1066 (1992); Canton, 489 U.S. at 385, 109 S.Ct. at 1203; City of St. Louis v. Praprotnik,

485 U.S. 112, 121-22, 108 S.Ct. 915, 923 (1988); Pembaur, 475 U.S. at 478, 106 S.Ct. at 1297-98.

It is not enough for a § 1983 plaintiff to identify conduct attributable to a municipality.

Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original).  Thus, to recover, the Plaintiffs

> must show that [their] civil rights were violated pursuant to and as a direct result of the [city's] official policy or custom.  The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the [city], and that the policy or custom caused [their] constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted).  In

a case alleging failure to train officers or to investigate, a plaintiff must also establish that the

municipality's failure "in a relevant respect evidences a 'deliberate indifference' to the rights of its

inhabitants."  See Ferguson v. Leiter, 220 F.Supp.2d 875, 884 (N.D. Ohio 2002) (quoting Canton,

489 U.S. at 389, 109 S.Ct.1197); Humes, 154 F.Supp.2d at 1363.

Before considering the specific arguments of the parties, the Court must address the scope

of the instant motion for summary judgment as to the Plaintiffs' § 1983 claims.  Similar to the Title

VII claim addressed above, each individual Plaintiff in this action asserts a claim pursuant to § 1983.

While the success of the individual claims under § 1983 hinges on the evidence submitted by each plaintiff in support of her specific claim, both parties have failed to addressed the claims in an individual manner.  The Plaintiffs cannot rely on the experience of their coworkers to support their individual claims.  Rather, in regard to their § 1983 claims, each Plaintiff must demonstrate how the Defendant engaged in *deliberate* conduct that was the moving force behind her own constitutional injury.  Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original).

The basis for Shelby County's motion for summary judgment is that each Plaintiff has failed to establish the existence of a municipal policy or custom supporting liability.  (Def.'s Original Mot. at 40).[22]  In support, the Defendant cites the existence of the IDP and maintains that evidence of discipline of hundreds of inmates at SCCC pursuant to it bolsters its contention that the policy was rigorously enforced.  (Def.'s Mot. at 40.)  In response, Plaintiffs collectively argue that the IDP is not rigidly or systematically enforced and further, that even if it were, the policy is not sufficient to address the sexual misconduct by inmates complained of here. (Pl.'s Resp. at 42; Order at 8.)

As the Court acknowledged in its order on the Defendant's first motion for summary judgment, a "'paper' policy cannot insulate a municipality from liability where there is evidence . . . that the municipality was deliberately indifferent to the policy's violation."  Daskalea v. District of Columbia, 227 F.3d 433, 442 (D.C. Cir. 2000).  However, each Plaintiff has failed to demonstrate in response to the instant motion that complaints of inmate harassment were ignored by the Defendant.  Rather, the evidence indicates that hundreds of inmates were punished in accordance with the IDP and further, that upon receiving notice in January 2002, SCCC undertook to increase

---

[22]The Plaintiff's renewed motion for summary judgment "incorporates the facts, law, and arguments contained in its prior memorandums [sic] . . . ."  (Def.'s Mot. Summ. J. at 1).

the penalty for sexual misconduct by inmates to the maximum allowed under the policy.  Further, while many of the Plaintiffs have cited instances of boorish behavior by male coworkers and supervisors, they have not demonstrated that the Defendant failed to act when complaints were filed regarding that conduct pursuant to the SCCC's sexual harassment policies.  Further, the Plaintiffs have collectively conceded that they do not state a claim based on coworker and supervisor harassment in this action.

To the extent that the Plaintiffs contend that the County's policy was deficient, the Court notes that they have not pointed to any alternative which could have been utilized to reduce the inmates' misconduct but was intentionally withheld.  Hicks, 45 F. Supp. 2d at 933 (citing, as a basis for granting the defendants' motion for summary judgment, the failure of the plaintiffs "to identify any measure which could have been employed to curtail the inmate's conduct but was deliberately withheld by the defendants").  The report of Plaintiffs' expert, McCauley, takes issue with the failure of the County to employ a consultant or organization to conduct a management or policy study of the issues pertaining to inmate exposure at SCCC.  (McCauley Report, March 10, 2005 ("McCauley I") at D1199).  McCauley surmises that this would enable the SCCC to collect information and determine whether the institution has "problem inmates, problem corrections officers, and/or problem policies."  (McCauley I  at D1199).  McCauley further opines that the Defendant should create an "'inspections/compliance' unit" to conduct inspections for compliance and further, to implement a "Quality Circle Program" through which officers and managers can work together to solve internal problems. (McCauley I at D1199-1200).

The Court finds McCauley's opinions unavailing in consideration of the instant matter.  He concedes that he has never conducted a management study of the sort which he recommends that

SCCC undertake.  (Dep. Dr. Paul McCauley ("McCauley Dep.") at 33).  Further, because he has no

data on the level of sexual harassment and inappropriate sexual behavior at similar institutions, he

cannot state whether that experienced at SCCC is unusual or, for that matter, provide any indication

of the effect of the proposals he asserts may have on the conduct.  (McCauley Dep. at 57).  The

Court concludes that the Defendant cannot be held liable under § 1983 for withholding institution

of alternative measures, such as those by McCauley, whose effect on the conduct at issue here is

entirely speculative.  See Labo v. Borger, No. 02-3975, 2005 WL 1971867, *4 (D.N.J. Aug. 15,

2005) (explaining "that to allow lawsuits to succeed based on pure speculation that an alternative

policy could have yielded different results would create a policy of 'de facto respondeat superior'

and engage courts in 'the endless exercise of second-guessing municipal employee-training

programs.'")

(citing and quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206 (1989)).

While it is no excuse for the conduct exhibited by inmates in the SCCC, as noted by other

courts addressing sexual harassment claims in penal institutions, the fact that socially deviant

behavior such as that complained of here occurs in these environments is a reality.  The law does

not require that the Defendant ensure that such conduct does not occur, but only that it not be

deliberately indifferent to its occurrence.  Because the Plaintiffs have failed to demonstrate that the

Defendant acted in a deliberate manner, or that it was the moving force behind the conduct giving

rise to their alleged injuries, their claims for violation of § 1983 are DISMISSED.

<u>CONCLUSION</u>

For the reasons stated herein, the motion of the Defendant for summary judgment is

GRANTED.

31

**IT IS SO ORDERED** this 5th day of July, 2007.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE